OPINION OF THE COURT
Howard A. Ruditzky, J.
The defendant (Robert E. Lee) is charged with one count of attempted burglary in the second degree (Penal Law §§ 110.00, 140.25 [2]), two counts of criminal trespass in the second degree (Penal Law § 140.15), one count of robbery in the first degree (Penal Law § 160.15 [4]), one count of robbery in the third degree (Penal Law § 160.05), two counts of grand larceny in the fourth degree (Penal Law § 155.30 [4], [5]), one count of petit larceny (Penal Law § 155.25), one count of burglary in the first degree (Penal Law § 140.30 [4]), one count of burglary in the second degree (Penal Law § 140.25 [2]) and one count of burglary in the third degree (Penal Law § 140.20). Defendant has moved to contest the probable cause for his arrest and to suppress the identification of the defendant by the complaining witness and another witness based upon two identification procedures, both of which were performed at the station house by both witnesses separately: (a) a prearrest computer-generated photographic array and (b) postarrest lineup identifications.
At a Wade /Dunaway hearing held on May 27,1999, the court heard testimony from the following witnesses for the People: Officer Michael Boero of the New York City Police Department, 78th Precinct, Borough of Brooklyn, and Detective John Coyle of the New York City Police Department, 78th Detective Squad, Borough of Brooklyn. There were no witnesses for the defense. *170 The court finds the testimony of the People’s witnesses' credible.
For the reasons stated below, the court finds that the police had probable cause to make the arrest and that both the photographic and lineup identifications of the defendant were proper and not subject to suppression. Accordingly, defendant’s motion is denied in its entirety.
FINDINGS OF FACT
On October 2, 1998, Detective Coyle went to 822 President Street, County of Kings, to investigate a robbery that had allegedly taken place at that location and interviewed both the complainant and another witness. Detective Coyle learned from the interviews that earlier that same day, the complainant had entered the hallway of the building located at 822 President Street, Brooklyn, New York, when a male, who had followed the complainant, confronted the complainant in the hallway, pretended that he had a gun in his pocket and demanded money from the complainant. A verbal confrontation ensued, which was heard by the other witness, who came to complainant’s assistance and chased the man who had confronted the complainant to Seventh Avenue, Brooklyn, New York. It was later discovered that a wallet and “some cash” had been taken from the complainant. (Transcript oí Wade I Dunaway hearing, May 27, 1999, direct testimony of Detective John Coyle [Coyle Direct], at 32, lines 3-5.)
On October 4, 1998, two days after the incident, both the complainant and the other witness came to the precinct to view photographs of suspects in the robbery incident. The photographs viewed were displayed on a PIMS computer. The computer selected photographs for display based upon a general description of the suspect, including race, age, height and weight. The description, which was input into the computer, was provided to Detective Coyle during an interview of both witnesses at one time. The description was as follows: “male, 35 to 40 years old * * * black, weighing about 160 pounds, five foot-ten, clean-shaven”. (Coyle Direct, at 34, lines 9-13.) Both witnesses examined 237 photographs selected by the computer, and both identified defendant from those photographs. Although in the same room, the witnesses had no conversation with each other outside the presence of Detective Coyle throughout this identification process. After the photographic identification was made by both witnesses, Detective Coyle then “put out a wanted card for the defendant and * * * posted *171 a wanted poster in the precinct” which included a photograph of the defendant taken from the PIMS computer. (Coyle Direct, at 36, lines 20-25, at 37, lines 2-7.)
On October 13, 1998, at some time between 4:00 p.m. and 4:40 p.m., while Officer Boero was on duty at the 78th Precinct, he was made aware at roll call of the wanted poster including the photograph of defendant and information to the effect that defendant was wanted for robbery, as well as a physical description of the defendant and pedigree information, e.g., defendant’s age. Officer Boero recognized the defendant as a person who he had witnessed being arrested in the precinct previously on another matter. At approximately 4:40 p.m., Officer Boero was traveling southbound on Prospect Park West in the vicinity of 3rd Street when he saw the defendant, who was also on Prospect Park West, and he and his partner exited their police vehicle and arrested the defendant. Officer Boero then brought the defendant to the station house and turned the defendant over to Detective Coyle, who had been notified by Officer Boero and his partner that defendant was being brought to the station house for processing. Detective Coyle then contacted the complainant and the other witness and arranged a lineup, obtaining “fillers” from the Brooklyn Shelter, located in Brooklyn, New York. (Coyle Direct, at 41, lines 14-25, at 42, lines 2-25, at 43, lines 2-7.) The lineup sheet, admitted into evidence as People’s exhibit 3, indicates that the defendant took the fourth position in the six-person lineup. Both the complainant and the other witness identified defendant, number four in the lineup, as the person who complainant had encountered and who the other witness had chased out of the hallway. Photographs of the lineup were admitted into evidence as People’s exhibits 4-A, 4-B and 4-C.
CONCLUSIONS OF LAW
Defendant now moves to contest the probable cause for his arrest and to suppress the photographic and lineup identifications of defendant as unduly suggestive. Each of defendant’s contentions will now be addressed in turn.
With respect to the prearrest photographic identification, defendant argues that the basis of the selection of the 237 photographs viewed by both the complainant and the other witness is flawed in that the description was obtained from both witnesses while sitting together at the same time, and that this procedure, where each witness reinforced the other in terms of the description, was unduly suggestive. Defendant *172 further argues that the fact that there was more than one photograph of defendant in the computerized photo array was also unduly suggestive. However, the mere presence of more than one photograph of the defendant, where the photographs were neither highlighted nor made distinguishable in any way from the rest of the 237 photographs selected by the PIMS computer does not render the photographs unduly suggestive. (See, People v Troiano, 198 AD2d 385, 386 [2d Dept 1993] [3 slides of defendant appearing among nearly 200 slides not unduly suggestive].) Moreover, according to the record, although the witnesses were in the same room at the same time when providing the identification upon which the selection of the photographs was based and when viewing the photographs selected, the witnesses conducted no conversation with each other outside of the presence of Detective Coyle, and thus neither had the opportunity to make unduly suggestive statements to the other. Finally, although both witnesses were in the same room at the time each viewed the photo array, each witness did so separately, without either one seeing what the other was looking at, and the two witnesses did not converse with each other at all when viewing the selected photographs. Accordingly, the court finds that the prearrest photographic identification should not be suppressed.
The court further finds that the photographic poster of defendant brought to the attention of Officer Boero, coupled with Officer Boero’s recognition of the defendant from a prior incident, provided Officer Boero with probable cause to arrest the defendant. Identification materials bearing a defendant’s likeness and prepared under police auspices are sufficient to constitute probable cause for an arrest. (See, People v Williams, 122 AD2d 901 [2d Dept 1986] [police officer justified in detaining defendant where defendant bore an “ ‘amazing similarity’ ” to a composite sketch the officer had in his possession].) Here, the fact that the officer recognized defendant’s face both from the photograph and from recollection of a prior encounter with him reinforces the probable cause foundation for the arrest.
Finally, with respect to the station house lineup identification of defendant, there is nothing in the record that supports defendant’s argument that the lineup procedure was unduly suggestive. The complainant and the witness were brought in one at a time, and each, individually, identified defendant as the person whom they had seen at the time and place in question. There is no indication of any conversation *173 between the two witnesses on that occasion or of any other action taken by the police that might have tainted the lineup procedure. Where, as here, the photographs of the lineup indicate that all of the men appear to be of similar appearance, the composition of the lineup panel is not unduly suggestive. (People v Turley, 162 AD2d 564 [2d Dept 1990].)
Accordingly, defendant’s motion to contest the probable cause for his arrest and to suppress both the photographic and lineup identifications is denied in its entirety.